**INDIANA ALCOHOLIC BEVERAGE COMMISSION, Appellant–Respondent,**

**v.**

**RIVER ROAD LOUNGE, INC. d/b/a OK Corral, Appellee–Petitioner.**

No. 79A04–9110–CV–331.

Court of Appeals of Indiana, Fourth District.

April 22, 1992.

Transfer Denied July 8, 1992.

Linley E. Pearson, Atty. Gen. of Indiana and Michael A. Schoening, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellant-respondent.

Charles R. Deets, III, Heide, Sandy, Deets, Kennedy, Schrader & Antalis, Lafayette, for appellee-petitioner.

CONOVER, Judge.

Respondent–Appellant Indiana Alcoholic Beverage Commission (Commission) appeals the trial court's judgment in favor of Petitioner–Appellee River Road Lounge, Inc. d/b/a/ OK Corral (Lounge), which remands the revocation of the Lounge's alcohol permit to the Commission.

We affirm.

The Commission's sole issue for our review is whether the trial court erred in determining insufficient evidence existed to support a finding the permittees knew their premises was being used as a public nuisance.

In the summer of 1989, Alberta Bagnell was president of River Road Lounge, Inc. Her son, Wesley Bagnell, Jr., was vice-president and manager. The Commission's prosecutor charged that on various dates that summer the Lounge, a topless dance bar, allowed its permit premises to become a public nuisance in violation of 905 IAC 1–27–2. Specifically, the prosecutor alleged on fourteen different occasions, the Lounge was the scene of drug sales in violation of IND.CODE 35–48–4–1(a) (Dealing in cocaine or narcotic drug).

When this matter was prosecuted before the Commission, the hearing judge found the Lounge guilty of eleven violations of IC 35–48–4–1. As a result, the permittees, the Bagnells, were ordered to sell their interest in the permit premises and to pay a $500 fine for each violation.

Subsequently, the Lounge petitioned for judicial review. The trial court entered a judgment in favor of the Lounge, finding the Commission's decision was not supported by substantial evidence because the evidence failed to show the permittee Bagnell had any knowledge the premises were being used as a public nuisance under 905 IAC 1–27–2. The Commission appeals.

The Commission contends the trial court erred because it engaged in weighing the evidence and judging the credibility of the witnesses. It urges substantial evidence exists to support the Commission's decision. The Commission in its findings of fact stated Alberta and Wesley Bagnell

allowed the permit premises to become a public nuisance. The Commission repeated this statement in its conclusions of law.

■ This case is governed by the Indiana Administrative Adjudication Act, now IC 4–21.5–3–1 *et seq.* The function of the court on judicial review is limited to a determination of whether the agency possessed jurisdiction over the matter, whether the order was made in accordance with proper legal procedure, was based upon substantial evidence, and did not violate any constitutional, statutory or legal principle. *Clarkson v. Department of Insurance, et al.* (1981), Ind.App., 425 N.E.2d 203, 206–207. In determining whether an administrative decision is supported by substantial evidence, the trial court must examine the whole record to determine whether the agency's decision lacks a reasonably sound basis of evidentiary support. *May v. Dept. of Nat. Resources* (1991), Ind.App., 565 N.E.2d 367, 373, *reh. denied, trans. denied.* Neither the trial court nor this court will weigh conflicting evidence or judge the credibility of witnesses. *Hamilton County D.P.W. v. Smith* (1991), Ind. App., 567 N.E.2d 165, 168. Further, the trial court may not substitute its judgment for that of the agency. *Id.*

■ Thus, administrative findings of fact are not reversed unless it conclusively appears the evidence upon which the decision was made was devoid of probative value or so proportionately inadequate that the finding could not rest on a rational basis. *May*, 565 N.E.2d at 373. However, although the reviewing court should accord the agency's interpretation of its statute great weight, the court is not bound by the agency interpretation and should reverse if the agency incorrectly interpreted the statute. *Hamilton County*, 567 N.E.2d at 168.

■ The elements of maintaining a public nuisance in violation of 905 IAC 1–17–2 are: The permittee allows the licensed premises to become a public nuisance or to be the scene of acts or conduct prohibited by the laws of the United States or Indiana. In order to determine whether there was substantial evidence that the permittee allowed the permit premises to become a public nuisance, we must first determine the proper interpretation of the word "allow". Because the regulation does not define "allow", we must construe the regulation's language in light of binding precedent from this state, persuasive authority from other jurisdictions, and rules of construction which have guided our interpretation of legislative enactments. Our goal is to seek out and give effect to the intent of the legislature. *B & M Coal Corp. v. United Mine Workers* (1986), Ind., 501 N.E.2d 401, 403, *cert. denied* 481 U.S. 1050, 107 S.Ct. 2183, 95 L.Ed.2d 839.

■ "Allow" has been construed by the courts in Indiana as meaning to concede, consent to, and to grant. *Doak–Riddle–Hamilton Co. v. Raabe* (1916), 63 Ind.App. 250, 114 N.E. 415, 417; *See also Wilson v. State* (1897), 19 Ind.App. 389, 46 N.E. 1050 (reversing trial court ruling holding bar owner liable for bartender's activities because the terms "allow" and "permit" impute some knowledge). Similarly, using the plain and ordinary meaning of the word as required by our rules of construction, "allow" is defined to mean admit, concede, or permit. *Hamilton County*, 567 N.E.2d at 169; *Webster's International Dictionary. Black's Law Dictionary* (1991 ed.) states "allow" has no rigid or precise meaning, its import varying according to circumstances or context with which it is used. It may mean "to approve of, accept as true, admit, concede, adopt, and to fix." It also may mean "to sanction, directly or indirectly as opposed to suffering a thing to be done, to acquiesce in, to suffer, and to tolerate."

In light of these definitions, it is evident 905 I.A.C. 1–27–2 requires the permittees to have direct or indirect knowledge of the drug purchases on their premises. The Commission claims the facts show Wesley Bagnell knew the drug sales were taking place there.

■ However, the evidence most favorable to the Commission's findings, only shows: (1) the Indiana State Police conducted an undercover investigation from

June 30, 1989, to August 16, 1989, because of complaints about drug sales at this location; (2) on eleven days during this period, undercover police officers covertly conducted fourteen drug transactions in the bar; (3) the dancers, employees of Wesley Bagnell, delivered the drugs to the undercover police; (4) Wesley Bagnell was on the premises either tending bar, checking on the parking lot or the adult bookstore next door during the time ten of the fourteen transactions took place; (5) he lived with one of the dancers involved for a period of time; and (6) the dancers used the phone for several of the drug transactions although such use was not permitted.

Further, it is uncontroverted the bar was dimly lit and the music was played loudly; Bagnell was never involved with any conversations about drugs or the sale of drugs; the undercover police initiated the sales as they sat at the tables drinking with the dancers; both the drugs and money were passed covertly in different ways such as passed under the table, pushed under a purse, folded in costumes, or hand-passed; and the undercover police did not observe any other instances of drug sales except the transactions they themselves conducted.

The administrative determination must be soundly based in evidence and inferences flowing therefrom. *Fire Prevention v. Rose Acre Farm's, Inc.* (1988), Ind.App., 530 N.E.2d 131, 133, *reh. denied, trans. denied.* Substantial evidence must exist to support an agency's decision. Substantial evidence requires something more than a scintilla and less than a preponderance of evidence. *Id.* It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Citizen's Action Coalition v. Public Serv. Co.* (1983), Ind.App., 450 N.E.2d 98, 102.

Here, the trial court in reviewing the record as a whole correctly found the evidence was insufficient to support the finding Wesley Bagnell knew drug transactions were occurring on the premises. The circumstantial evidence and the reasonable inferences therefrom do little more than create a suspicion Bagnell knew about the drug sales of his employees. However, substantial evidence is more than speculation and conjecture. Although the trial court must not engage in impermissible weighing of the evidence or judging credibility of witnesses, nevertheless, the court will not simply rubber stamp the agency's decision without critically reviewing the evidence as a whole. *Martin v. Sullivan* (S.D.Ind.1990), 750 F.Supp. 964, 968. The trial court did not err in finding the Commission's decision lacked a reasonably sound basis of probative evidentiary support.

*Affirmed.*

SHIELDS, J., concurs.

CHEZEM, J., dissents with separate opinion.

CHEZEM, Judge, dissenting.

I respectfully dissent. The hearing officer had the opportunity to see and hear the witnesses. The trial court exceeded its authority by reweighing the evidence. *See Indiana State Teachers Retirement Board v. Smock* (1975), 165 Ind.App. 429, 332 N.E.2d 800.

The trial court determined, and the majority agrees, that there is no evidence to support the determination that Wes Bagnall knew of the many drug deals occurring in his establishment. Yet, the record supports the reasonable inference that Wes Bagnell was either blind, stupid or indifferent to his dancers dealing drugs.

In sum, the hearing officer found the evidence sufficient. It was error for the trial court to reweigh that evidence and for the majority to support that reweighing.